IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

PLASTIC SUPPLIERS, INC.,

           Plaintiff,

                                    Civ. Action No.
                                    3:10-CV-0512 (TJM/DEP)

      v.

CENVEO, INC.,

           Defendant.

_____

APPEARANCES:                   OF COUNSEL:

FOR PLAINTIFF:

ARCHER & GREINER, P.C.       CHRISTOPHER GIBSON, ESQ.
One Centennial Square          JOHN R. POWERS, III.
Haddonfield, NJ 08033          MARK J. OBERTSTAEDT, ESQ.

HINMAN, HOWARD LAW FIRM    LESLIE PRECHTL GUY, ESQ.
P.O. Box 5250                  DAWN J. LANOUETTE, ESQ.
80 Exchange Street
700 Security Mutual Building
Binghamton, NY 13902-5250

FOR DEFENDANT:

KING & BALLOW               RICHARD S. BUSCH, ESQ.
1100 Union Street Plaza
315 Union Street
Nashville, TN 37201

HARRIS, BEACH, PLLC                     MARK B. WHEELER, ESQ.
P. O. Box 580                           RUSSELL E. MAINES, ESQ.
119 East Seneca St.
Ithaca, NY 14851-0580

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>DECISION AND ORDER</u>

Plaintiff Plastic Suppliers Inc. ("PSI") has commenced this action

against defendant Cenveo, Inc. ("Cenveo"), alleging breach of contact and

asserting diversity of jurisdiction as a basis for this court's jurisdiction,

pursuant to 28 U.S.C. § 1332. PSI maintains that Cenveo entered into a

contract to purchase polystyrene and polyactic films from the plaintiff for

use in windowed mailing envelopes, but has since wrongfully repudiated

the agreement.

Neither the parties nor the operative facts giving rise to plaintiff's

claims has any material connection with this district.[1]  Yet, PSI brought

suit here based on a forum selection provision within the contract at issue,

in which both parties agreed that any claim related to the agreement must

be brought in a state or federal court located in New York, and its

_____

[1]      Cenveo does operate a plant in Conklin, New York, and thus within this
district. The facility, however, does not manufacture product related to this suit, nor
does it have any other connection with the parties' dispute.

2

assessment that the action can be litigated efficiently and economically in this district.

Currently pending before the court is Cenveo's motion requesting that the action be transferred to the Southern District of New York, pursuant to 28 U.S.C. § 1404(a). Consideration of the factors informing the analysis of whether a transfer of the action is appropriate under that section weighs in favor of granting the motion, though not appreciably. Nonetheless, because Cenveo has consented to have the action brought here, and the Southern District of New York also has little, if any, meaningful  connection with the action, I find no basis to disturb plaintiff's choice of forum, and will therefore deny the pending motion.

I.      BACKGROUND

PSI is a New Jersey corporation with headquarters in Columbus, Ohio.  The plaintiff is one of only three domestic manufacturers of polystyrene films for use in mailing envelopes.  Plaintiff has a number of manufacturing facilities throughout the United States; none of those, however, is located in New York, although it does operate a manufacturing plant in relatively-nearby Mount Laurel, New Jersey.[2]

_____

[2]      Defendant calculates the distance from that plant to New York City to be slightly over eighty miles. *See* Christ Decl. (Dkt. No. 30-2) ¶¶ 10-11.

Defendant Cenveo is a Colorado corporation with principal corporate offices located in Stamford, Connecticut, and is one of only four major domestic envelope manufacturers that purchase polystyrene and polyactic acid envelope films in the United States.  Like PSI, Cenveo similarly operates several manufacturing plants, including one located in Jersey City, New Jersey.[3]

In or about the summer of 2009 Cenveo began purchasing plastic window films from PSI.  Prior to that time defendant acquired the bulk of its plastic window films from DOW Chemical, Inc., one of plaintiff's competitors.   Following negotiations, the parties ultimately entered into a contract in or about November of 2009 under which Cenveo agreed to purchase eighty percent of its film requirements from plaintiff through 2010, and ninety-eight percent thereafter for the remaining life of the contract, which was to expire on December 31, 2012.  Included within the contract was a provision granting an option to Gould Paper Corporation ("Gould") to purchase products from PSI on behalf of Cenveo.

The November 2009 supply agreement was later superseded by

---

[3]    Cenveo's Jersey City facility is located approximately seven miles from the Southern District of New York's Manhattan courthouse.  Christ Decl. (Dkt. No. 30-2) ¶ 13.

another executed in February 2010 and containing terms identical to those
of its predecessor.  Under both contracts the parties reached the following
agreement with regard to both jurisdiction and the applicable law to
govern any disputes arising under them:

> Section 10.   <u>Governing Law; Jurisdiction</u>.  This
> Agreement shall be governed by and construed in
> accordance with the laws of the State of New York,
> without regard to the conflicts of law rules of such
> state.  Any controversy or claim arising out of or
> relating to this Agreement shall be brought
> exclusively in the state or federal courts located in
> the State of New York, the jurisdiction of which the
> parties hereto irrevocably consent to.[4]

At some point during the course of performance under the terms of
these two agreements a dispute arose between the parties concerning the
quality of plaintiff's product.  According to the plaintiff, Cenveo has
disavowed the contract and turned to a competitor to supply its envelope
film, and with the exception of small purchases of a type of film not
available from other suppliers, Cenveo has not placed any orders under

---

[4]      Although neither party makes reference to it, attached to the Supply
Agreement as Exhibit A is a document entitled "Supplier Standard Terms", Dkt. No. 1-
2, containing a section which provides, in pertinent part, that "[t]he validity,
performance, construction and effect of this Invoice shall be governed by the law of the
State of New Jersey.  Any dispute arising out of or related to the Products of this
Invoice shall be resolved exclusively in the sate [sic] or federal courts of New Jersey,
the exclusive jurisdiction of which Buyer irrevocably consents to for this purpose. . . ."

the agreements since April of 2010.

## II.    PROCEDURAL HISTORY

Plaintiff commenced this action on April 30, 2010.  Since that time

issue has been joined, a conference has been conducted by the court in

connection with the action pursuant to Rule 16 of the Federal Rules of

Civil Procedure, and a Uniform Pretrial Scheduling Order ("UPSO") has

been issued governing the progression of the case.[5]  Dkt. No. 27.

On November 9, 2010, defendant Cenveo filed a motion seeking a

transfer of the action to the Southern District of New York pursuant to 28

U.S.C. § 1404(a).  That motion, which is now fully briefed, was argued

before me on January 7, 2011, at which time decision in connection with

the motion was reserved.[6]

---

[5]    Under the terms of the court's UPSO discovery must be completed by June 24, 2011, and dispositive motions are to be filed by July 29, 2011.  *See* Dkt. No. 27.  The UPSO also establishes a deadline for mediation, as well as a jury trial date of December 5, 2011.  *Id.*

[6]    Since a venue transfer is regarded as a non-dispositive matter, it is considered as falling within the scope of my jurisdiction as a magistrate judge under 28 U.S.C. § 636(b)(1)(A).  *See White Mop Wringer Co. of Canada Ltd. v. BT Capital Partners, Inc.*, No. 95-CV-565, 1997 WL 222380, at *1 (N.D.N.Y. Apr. 29, 1997) (Pooler, J.); *Pemrick v. Stracher*, No. 90-CV-849, 1992 WL 697636, at *1 (N.D.N.Y. Mar. 27, 1992) (McAvoy, C.J.)*; see also Advance Relocation & Storage, Inc. v. Wheaton Van Lines, Inc.*, No. CV 99-2491, 2000 WL 33155640  (E.D.N.Y. Sept. 15, 2000) (decision of magistrate judge ordering a venue transfer under section 1404(a)); *Tenen v. Winter*, 15 F. Supp. 2d 270 (W.D.N.Y. 1998) (decision by district judge affirming the order of a magistrate judge denying a motion for a change of venue).

III.    DISCUSSION

The statutory provision under which defendants' venue transfer motion is brought allows that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).  As the latter portion of that provision implies, as a threshold matter in order to transfer a case under section 1404(a) the court must find that the proposed transferee court has the ability to exercise personal jurisdiction over the defendants, and additionally that venue is appropriate in that forum.  *Oriska Ins. Co. v. Brown & Brown of Texas, Inc.*, No. 02-CV-578, 2005 WL 894912, at *4 (N.D.N.Y. Apr. 8, 2005) (Hurd, J.) (citations omitted); *Viacom Int'l, Inc. v. Melvin Simon Prods., Inc.*, 774 F. Supp. 858, 868 (S.D.N.Y. 1991) (citations omitted).

In this instance, the language of the governing forum selection clause makes clear that the parties have agreed to submit to personal jurisdiction anywhere in New York.  *Rescuecom Corp. v. Chumley*, 522 F. Supp. 2d 429, 443 (N.D.N.Y. 2007) (the use of the words "exclusive jurisdiction" have been specifically recognized as including consents to jurisdiction) (citation omitted).  It also seems clear that venue would be

7

appropriate in the Southern District, since the forum selection clause does not specify venue, but instead generally provides for an action to be brought in New York.

Having found that the proposed transferee court is an appropriate forum for adjudication of this claim, the court must next determine whether a transfer to that jurisdiction is warranted. Motions for transfer under section 1404(a) are addressed to the sound discretion of the court, and are informed by overarching notions of convenience and fairness. *Linzer v. EMI Blackwood Music, Inc.*, 904 F. Supp. 207, 216 (S.D.N.Y. 1995) (citations omitted). The burden of demonstrating the desirability of a transfer lies with the moving party; in considering such a motion, a court should not disturb a plaintiff's choice of forum unless the defendant makes a "clear and convincing" showing that the balance of convenience weighs strongly in favor of defendant's choice of venue.[7] *Id.* at 216-17 (citations omitted); *see also Excelsior College v. Frye,* 306 F. Supp. 2d 226, 231 (N.D.N.Y. 2004).

---

[7] Although an important consideration, it should be noted that plaintiff's choice of forum is far less outcome determinative in the analysis under section 1404(a) than it was under the doctrine of *forum non-conveniens*. *See Meteoro Amusement Corp. v. Six Flags*, 267 F. Supp. 263, 279 (N.D.N.Y. 2003) (McCurn, J.) (citing, *inter alia*, *Pelligrino v. Stratton Corp.*, 679 F. Supp. 1164, 1167 (N.D.N.Y. 1988)).

The factors generally identified by the courts as relevant when addressing a section 1404(a) transfer motion include 1) the place where the operative facts occurred; 2) convenience of the parties; 3) the convenience of witnesses; 4) the relative ease of access to sources of proof; 5) the availability of process to compel attendance of unwilling witnesses; 6) the plaintiff's choice of forum; 7) the forum's familiarity with the governing law; and 8) trial efficiency and the interests of justice.[8] *Viacom*, 774 F. Supp. at 867-68 (citations omitted); *see Excelsior College*, 306 F. Supp. 2d at 231.

The core determination to be made under section 1404(a) involves identifying the center of gravity of the litigation; a key component of that inquiry is focused upon the convenience of witnesses.   *Viacom*, 774 F.Supp. at 868 (citations omitted).  Courts routinely transfer cases when

---

[8]       Some cases also cite the relative means of the parties as an additional consideration.  *Indymac Mortgage Holdings, Inc. v. Reyad*, 167 F. Supp. 2d 222, 239-40 (D. Conn. 2001).  Although courts can consider the relative means of parties, this factor is not entitled to great weight where plaintiff and defendant are both corporations." *Toy Biz, Inc. v. Centuri Corp.*, 990 F. Supp. 328, 331 (S.D.N.Y 1998).  Additionally, "[a] party arguing for or against a transfer because of inadequate means must offer documentation to show that transfer (or lack thereof) would be unduly burdensome to his finances." *Federman Assocs. v. Paradigm Medical Indus., Inc.*, No. 96 Civ. 8545(BSJ), 1997 WL 811539, at *4 (S.D.N.Y. Apr. 8, 1997) (citations omitted); *see also Orb Factory, Ltd. v. Design Science Toys, Ltd.*, 6 F. Supp. 2d 203, 210 (S.D.N.Y. 1998) ("[W]here proof of such disparity is not adequately provided, or does not exist, this is not a significant factor to be considered.") (citation omitted).  Here, there is no argument made concerning the relative means of the parties.

9

the principal events occurred, and accordingly the key witnesses are located, in another district.  *Id.* (citing *Computer Horizons Corp. v. Knauer*, 483 F. Supp. 1272 (S.D.N.Y.1980)).  Where the operative facts of the case have little connection with the district where the suit is pending, the importance of the plaintiff's forum choice as a factor is considerably lessened.  *Id.*

Consideration of the relevant section 1404(a) factors weighs somewhat, though not markedly, in favor of the Southern District.  The parties' submissions provide little information concerning the locus of the operative facts in this case, although it appears clear that few, if any, occurred in the Northern District of New York.  While there apparently were some business discussions held between the parties in New York City, the record does not disclose where the contract was actually negotiated and executed.  Convenience of the parties does not appear to be a strong consideration since although the Southern District of New York is slightly more proximate to Stamford, Connecticut, where Cenveo has its headquarters and some of its potential witnesses are located, it does not appear that the Northern District of New York would be materially less convenient for them.  Party and witness convenience does not

appear to be a consideration for the plaintiff, which has not identified any of its witnesses located in either district now under consideration.[9]

Turning to convenience of the witnesses, it is said that this is "probably the single-most important factor in the analysis of whether transfer should be granted." *In re Bennett Funding Group, Inc.*, 259 B.R. 243, 249 (N.D.N.Y.2001) (citation omitted).  "While the convenience of party witnesses is a factor to be considered, the convenience of non-party witnesses is the more important factor*." Aquatic Amusement Assocs., Ltd. v. Walt Disney World Co.*, 734 F. Supp. 54, 57 (N.D.N.Y.1990) (citation omitted).  In weighing the convenience of witnesses, courts should consider both the number of witnesses located in a given venue and the relative salience of their prospective testimony. *See Fuji Photo Film Co., Ltd. v. Lexar Media, Inc.*, 415 F. Supp. 2d 370, 373 (S.D.N.Y. 2006) (stating "the court must qualitatively evaluate the materiality of the testimony that the witnesses may provide") (internal quotation marks and citation omitted).

---

[9]    Acknowledging that courts are reluctant to transfer venue where it would merely shift the inconvenience from one party to the other, *Wagner v. New York Marriott Marquis*, 502 F. Supp. 2d 312, 316 (N.D.N.Y. 2007), defendant asserts that plaintiff cannot argue that its witnesses would be inconvenienced by the transfer.

11

In this case, the key Cenveo witnesses all appear to be located in Connecticut, and thus closer to the Southern District of New York than to this district.  It also appears that many of the quality issues leading to Cenveo's repudiation of the contract were experienced at Cenveo's Jersey City plant, and it is therefore presumably more convenient for witnesses from that facility to travel to the Southern District of New York for trial.  There is also some potential involvement of non-party witnesses in the action, including principally those from Gould, located in New York City.  Convenience of non-party witnesses is thus a factor which weighs in favor of transfer.[10]

For much the same reason as was previously discussed, ease of access to sources of proof does not appear to heavily favor either of the districts under consideration in this case.  The availability of process to compel attendance of unwilling witnesses, including notably those from Gould, does not appear to be a determining factor since under Rule 45 a witness from New York City can be subpoenaed for a trial in the Northern

---

[10]     It is doubtful, however, that if the case remains in this district and Gould witnesses are deposed and/or called for trial they will suffer significant inconvenience. In terms of deposition, the governing rules provide that as a non-party no Gould witness can be forced to appear for deposition involuntarily more than one hundred miles from where he or she resides, is employed or regularly transacts business in person.  *See* Fed. R. Civ. P. 45(c)(3)(A)(ii).

District of New York.  *See* Fed. R. Civ. P. 45(b)(2)(C) and 45(c)(3)(A)(ii).

Similarly, familiarity with governing legal principles does not appear to play

a role in the section 1404 calculus, since judges in both districts are

presumably familiar with and equally capable of applying New York law

concerning contracts.

In terms of trial efficiency, in opposing Cenveo's motion plaintiff has

argued that the Southern District of New York is a congested court, citing

older cases, some of which characterize "the Southern District of New

York [as] the busiest judicial district in the nation."  *Kanbar v. U.S.*

*Healthcare, Inc.*, 715 F. Supp. 602, 606 (S.D.N.Y. 1989); *see also Coker*

*v. Bank of America*, 984 F. Supp. 757, 768 (S.D.N.Y. 1997).  It also

attaches to its opposition papers statistics indicating that there are 26,245

cases pending in the Southern District in 2009, and only 2,577 pending in

the Northern District.  Analysis of publically available data, however,

reflects that there is no material difference in terms of court congestion

and disposition times between the two districts, particularly when

considering the length of time from filing to trial.[11]

---

[11]     According to statistics maintained by the Administrative Office of the
United States Courts, for the twelve month period ending September 30, 2009 the
average time from filing to trial in a civil case was 31 months in this district, as opposed
to 31.4 in the Southern District of New York.

As can be seen, this district has no connection with the parties and operative facts in this case, and consideration of the relevant factors weighs slightly in favor of a transfer to the Southern District of New York. In this case, however, the question of whether the action should be transferred is complicated by the existence of a forum selection provision under which the parties have consented to jurisdiction in the state and federal courts of New York.  "The presence of a [valid and enforceable] forum-selection clause ... [in a case] will be a significant factor that figures centrally in the district court's calculus [when deciding a motion to transfer venue under 28 U.S.C. § 1404(a)]."  *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S.Ct. 2239, 2244.  This is because, as the Supreme Court has explained, "[t]he flexible and individualized analysis Congress prescribed in § 1404(a) ... encompasses consideration of the parties' private expression of their venue preferences."  *Id.* at 29-30, 108 S.Ct. at 2244.  The practical effect of the presence of a valid forum selection clause is to "put[ ] a greater burden on the party seeking to transfer the case."  *Elite Parfums, Ltd., v. Rivera*, 872 F.Supp. 1269, 1272 (S.D.N.Y.1995); *see also A.I. Int'l Corp. Holdings, Inc. v. Surgicare, Inc.*, No. 03 Civ. 2481, 2003 WL 22705128, at *3-4 (S.D.N.Y. Nov. 17, 2003)

14

(citing *Elite Parfums*) (requiring more than "[m]ere inconvenience and expenses of traveling" where forum selection clause is present on motion to transfer venue; requiring presence of "exceptional circumstances").

"Forum selection clauses are presumptively enforceable, and will be enforced unless the party seeking to avoid the designated forum shows: (1) fraud or coercion in the incorporation of the clause, (2) denial of the complaining party's day in court, due to the grave inconvenience of the selected forum or the fundamental unfairness of the chosen law, or (3) frustration of a strong public policy of the forum." *Rich Corp. v. M/V "Ming Plenty"*, No. 01 CIV 6268, 2002 WL 109576, at * 2 (S.D.N.Y. Jan. 25, 2002) (citation omitted).

In its reply, defendant seems to suggest that because it asserts the contract as a whole is unenforceable, the forum selection clause is likewise unenforceable and should be given no weight in the court's consideration of this motion.  This argument, however, is contrary to the law. *A.I. Credit Corp. v. Liebman*, 791 F. Supp. 427, 430 (S.D.N.Y. 1992) (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10, 92 S. Ct. 1907, 1913 (1972)) ("A party may not, however, avoid the effect of a forum selection clause merely by alleging fraud or coercion in the inducement of

15

the contract at issue.  Rather, the party must show that '*the inclusion of that clause in the contract was the product of fraud or coercion*.'") (emphasis in original).

Indisputably, a forum selection clause agreed to by the parties should be given significant weight when deciding a motion to transfer such as that now before the court.  *Elite Parfums, Ltd.,* 872 F. Supp. at 1272 (quoting *Stewart Org., Inc.*, 487 U.S. at 29, 108 S. Ct. at 2243).  The circumstances now before the court, however, present a close case.  As has been noted, the case has no tangible connection with this district.  To be sure, "[t]here is no requirement that there . . . be a substantial nexus between the chosen forum and the claim for the choice of forum to receive deference; rather there must be some material relation." *Race Safe Sys., Inc. v. Indy Racing League*, 251 F. Supp. 2d 1106, 1111 (N.D.N.Y. 2003) (internal quotation marks and citation omitted).  However, such deference should not be strictly applied in a case "where none of the operative facts of the action occur in the forum selected by the plaintiff."  *Wagner v. New York Marriott Marquis*, 502 F. Supp. 2d 312, 317 (N.D.N.Y. 2007) (quoting *Fitzgerald v. Central Gulf Steamship Corp.*, 292 F. Supp. 847, 849 (E.D.Pa. 1968)) (internal quotation marks omitted).  Similarly, a plaintiff's

choice of forum will be accorded less weight when it is not the plaintiff's

home.  *Abovekeeper, Inc. v. Recording Industry Ass'n of Amer., Inc.*, 166

F. Supp. 2d 655, 660 (N.D.N.Y), *aff'd sub nom. BuddyUSA, Inc. v.*

*Recording Industry Ass'n of Amer., Inc.*, 21 Fed. App'x 52 (2d Cir. 2001).

In the end, the court must examine where the interests of justice lie,

particularly in a case such as this bearing little or no tangible connection

to the forum selected.  The interests of justice, while undeniably

somewhat intangible in nature, "has been deemed the most important

factor."  *The Research Foundation of State of Univ. of New York v.*

*Luminex*, No. 1:07-CV-1260, 2008 WL 4822276, at *8 (N.D.N.Y. Nov. 3,

2008) (Treece, M.J.) (quoting *Race Safe Systems, Inc. v. Indy Racing*

*League*, 251 F. Supp. 2d at 1111).  Where the interests of justice weigh

so heavily in favor of transfer a plaintiff's form selection, which is

consistent with an agreed upon forum selection provision, may be

overridden and a transfer ordered.  *ZPC 2000, Inc. v. SCA Group, Inc.,* 86

F. Supp.2d 274, 278 (S.D.N.Y. 2000).  In this instance, however, the

interests of justice do not heavily favor either forum now under

consideration; neither has any meaningful connection with this action.

Given this circumstance, and since plaintiff has properly invoked an

agreed-upon forum selection clause, and the defendant has consented to submit to the jurisdiction of any state or federal court in New York, I find no basis to interfere with the parties' agreement and plaintiff's choice of venue.

IV.   <u>SUMMARY AND CONCLUSION</u>

Undeniably, neither the plaintiff, the defendant, nor the operative facts in this case has any tangible connection with the Northern District of New York.  Plaintiff nonetheless commenced this action here pursuant to a forum selection provision under which both parties agreed to submit to the jurisdiction of any state or federal court within New York for purposes of addressing any disputes under their agreement.  Defendant now seeks to transfer the case to another district bearing only slightly more of a connection to the parties and the operative facts, arguing that the interests of justice warrant a transfer notwithstanding the parties' agreement. Because I find that the interests of justice do not weigh so heavily in favor of transfer as to effectively override the parties' forum selection provision and plaintiff's choice of venue, I conclude that transfer of the matter to the Southern District of New York would be inappropriate.  It is therefore hereby

ORDERED, that defendant's motion to transfer this case pursuant to pursuant to 28 U.S.C. § 1404(a) to the Southern District of New York (Dkt. No. 30) is DENIED; and it is further

ORDERED, that a telephone conference will be held in this action on February 1, 2011 at 4:00 p.m.; plaintiff's counsel is directed to make arrangements for placement of the call.

Dated:      January 19, 2011
            Syracuse, NY

David E. Peebles
U.S. Magistrate Judge