UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
PLASTIC SUPPLIERS, INC,

                                  Plaintiff,

    v.                                                          3:10-cv-512

CENVEO, INC,

                                  Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

       Plaintiff Plastic Suppliers, Inc. commenced the instant action against Defendant Cenveo, Inc. asserting a claim for breach of contract. Presently before the Court is Plaintiff's motion for partial summary judgment pursuant to Fed. R. Civ. P. 56 on the issue of liability.

**I.    BACKGROUND**

       Defendant Cenveo manufactures envelopes that utilize plastic window films ("PWF"). Plaintiff Plastic Suppliers is a manufacturer and distributor of PWF. In the summer of 2009, the parties began discussing an agreement whereby Defendant would purchase PWF from Plaintiff. Beginning in August 2009, Defendant made purchases of PWF and used the products in production at its plants. From August 2009 through mid-November 2009, Defendant experienced some success with Plaintiff's PWF. Defendant also experienced some problems with the PWF. Some of the problems included cutting issues (the film was difficult to consistently cut), breaking/tearing issues (the PWF would break in the middle of a run); and speed issues (the PWF was difficult to run on Defendant's machines at higher speeds).

       On November 16, 2009, Defendant executed a written Supply Agreement (the "Agreement") with Plaintiff. According to the terms of that Agreement, Defendant

shall, beginning on the Effective Date through December 31, 2010, purchase from [Plaintiff], eighty percent (80%) of all of [Defendant's] requirements for the Products, subject to the terms and conditions of this Agreement. Beginning January 1, 2011, through the remainder of the Term (defined below) of this Agreement, purchase from Supplier ninety-eight percent (98%) of all of Purchaser's requirements for the Products, subject to the terms and conditions of this Agreement. . . .

Section 4 and Exhibit A contained, among other things, the parties' agreed upon warranties and remedies in the event of non-conforming goods.[1] Exhibit A of the Agreement provided as follows:

> Seller warrants to Buyer that the products referenced on the front of this invoice (the "Products"), when shipped by Seller, will meet Seller's applicable published specifications. Buyer shall be solely responsible for determining the suitability for use of the Products and Seller shall in no event be liable in this respect. Seller's obligations and liabilities hereunder shall not be enforceable until title to the Products has passed pursuant to the provisions hereof. No Products may be returned without the prior written approval of Seller after a determination by Seller that the Products fail to meet Seller's applicable published specifications. Seller shall, at its own expense, repair or replace any Products it determines do not conform to its published specifications, provided Buyer notifies Seller of the failure to conform in writing with the time period set forth below in the paragraph entitled CLAIMS. THE FOREGOING OBLIGATIONS ARE IN LIEU OF ALL OTHER OBLIGATIONS AND LIABILITY OF SELLER RESPECTING THIS INVOICE OR THE PRODUCTS INCLUDING ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING ANY WARRANTY OR MERCHANTABILITY OF FITNESS FOR PARTICULAR APPLICATIONS OR PURPOSES WHICH ARE ESPRESSLY [sic] DISCLAIMED.

The "Claims" provision of the Agreement provided as follows:

> Within thirty (30) days after tender of delivery to Buyer of any shipment and before any portion of the Products (except for reasonable test and inspection quantities) has been changed from its original condition, Buyer shall inform Seller in writing if any Products are believed to be defective or otherwise believed not to conform with Buyer's order. Any claims not made within such period of time shall be waived, and Buyer shall be deemed to have accepted Seller's shipment of Products. The weights, volumes, sizes and fares set forth in this Invoice shall govern in the event

---

[1] Defendant contends that it signed the Agreement based on Plaintiff's representations and promises that the PWF would work for Defendant, that there would be certain improvements at Cenveo's plants, and that Plaintiff would change the blend (i.e. composition) of the film.

- 2 -

> of a dispute unless proved erroneous.  Material varying not more than ten percent (10%) in weight, quantity, size, width, thickness or length shall be deemed to be in compliance with this Invoice.

Section 4 of the Agreement also provided, in part, that:

> The Products are subject to the standard limited warranted, if any, contained in Suppliers' Standard Terms.  PURCHASER'S AND AGENT'S EXCLUSIVE REMEDY, AND SUPPLIER'S SOLE OBLIGATION, WITH RESPECT TO A BREACH OF THE FOREGOING WARRANTY, IS TO HAVE THE DEFECTIVE PRODUCE REPAIRED OR REPLACED.  AS A CONDITION PRECEDENT TO SUCH REMEDY, PRIOR TO RETURNING ANY ALLEGEDLY DEFECTIVE PRODUCTS, PURCHASER OR AGENT, AS APPLICABLE, MUST OBTAIN FROM SUPPLIER'S AUTHORIZED REPRESENTATIVE WITHIN SIX (6) MONTHS OF THE DATE OF PURCHASE A RETURN AUTHORIZATION.  WITH THE EXCEPTION OF THE FOREGOING WARRANTY, SUPPLIER MAKES NO WARRANTY, EXPRESS OR IMPLIED, WITH RESPECT TO THE PRODUCTS, AND SPECIFICALLY DISCLAIMS ALL WARRANTING IMPLIED AT LAW INCLUDING, WITHOUT LIMITATION, THE IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, AND NON-INFRINGEMENT.

Between September 2009 and March 2010, Defendant purchased approximately 2,507,077 pounds of PWF from Plaintiff.  Plaintiff contends, and Defendant disputes, that every shipment of PWF met or exceeded Plaintiff's published specifications.  While Defendant experienced some success in using Plaintiff's PWF, from November 16, 2009 to February 5, 2010, Defendant made some complaints about the shipments.  Defendant's complaints were not stated in terms of failure to meet published specifications, but did identify various problems with the film.  Defendant encountered continuous difficulties using Plaintiff's PWF.

Film was purchased from Plaintiff for several months through January 2010.  In January 27, 2010, Defendant advised Plaintiff that it was using a competitor's film until Plaintiff could resolve its performance and quality issues. In February 2010, Defendant re-

signed a Supply Agreement with terms that, for purposes of the instant motion, are identical to the original Agreement. Thereafter, the number of orders placed by Defendant decreased.

Plaintiff then commenced the instant action asserting claims of breach of contract and breach of the covenant of good faith and fair dealing. Plaintiff previously moved for summary judgment on the issue of whether the parties entered into an enforceable agreement. The Court held that the Agreement was enforceable. Currently before the Court is Plaintiff's motion for summary judgment on Defendant's liability for breach of contract.

## II.   DISCUSSION

Plaintiff moves for summary judgment claiming that Defendant breached the Agreement by failing to purchase the requisite amounts of Plaintiff's PWF as specified in the Agreement. Defendant opposes the motion on the grounds that: (1) Plaintiff did not adequately test the PWF to ensure it met published specifications; (2) the PWF supplied by Plaintiff did not meet those specifications; (3) Defendant demanded adequate assurances of performance, which Plaintiff refused; (4) the remedies under the Agreement failed their essential purpose; (5) Defendant adequately reported non-confirming goods to Plaintiff; and (6) Defendant properly terminated the Agreement.

Before addressing the specific arguments raised by the parties, it is helpful to set out the warranty process under the Agreement:

(i) Plaintiff warranted that the PWF would meet its own published specifications;

(ii) Defendant was solely responsible for determining the suitability for use of the PWF;

(iii) within thirty days after tender of delivery, Defendant had to inform Plaintiff in writing if any PWF was believed to be defective;

- 4 -

> (iv) Defendant could not return any PWF unless: (a) Plaintiff determined that the PWF failed to meet published specifications; and (b) upon such a finding, Plaintiff provided written approval; and
>
> (v) Seller would repair or replace any PWF that it determined did not conform with its published specifications.

With this process in mind, the Court will now address the parties' arguments, using the familiar summary judgment standard.[2]

### a. Whether Defendant Purchased the Requisite Quantities of PWF from Plaintiff

Plaintiff moves for summary judgment on the ground that Defendant did not purchase the contractually agreed to amounts of PWF. Pursuant to the plain terms of the Agreement, Defendant was required to purchase certain percentages of its requirements from Plaintiff. There is no dispute that Defendant did not purchase the requisite percentages of its PWF requirements from Plaintiff. Thus, absent proper justification for non-performance, Defendant is in breach of the contract.

### b. Whether Plaintiff Properly Tested the PWF Prior to Shipping

Defendant first argues that its non-performance was excused because Plaintiff did not properly test the PWF prior to shipping to ensure that it met the published specifications. This argument must be rejected because the Agreement did not obligate Plaintiff to test the PWF prior to shipping. Rather, Plaintiff warranted that the product shipped would meet certain specifications. In the event the PWF did not meet those specifications, Defendant

---

[2] See Pilatich v. Town of New Baltimore, 2011 WL 9192 (N.D.N.Y. 2011), wherein this Court set out the standard of review on a summary judgment motion.

could avail itself of the remedies set forth in the Agreement, including affording Plaintiff an opportunity to cure.

Relatedly, Defendant contends that Plaintiff should be estopped from asserting a breach of contract claim because it acted in bad faith in failing to ensure that the film met the required specifications.  "Under New York law, the party asserting estoppel must show that the party alleged to be estopped (1) engaged in conduct which amounts to a false representation or concealment of material facts; (2) intended that such conduct would be acted upon by the other party; and (3) knew the real facts."  Readco, Inc. v. Marine Midland Bank, 81 F.3d 295, 301 (2d Cir. 1996).  Defendant also must show that it (1) lacked knowledge of the true facts; (2) relied on Plaintiff's conduct; and (3) changed its position to its prejudice.  Id.

Defendant cannot avail itself of estoppel because there is an insufficient showing that Plaintiff concealed any material facts, that Defendant lacked knowledge of the true facts, or that Defendant reasonably relied on Plaintiff's conduct.  The parties had been conducting business prior to entering into the subject Agreements.  Defendant was aware of some of (if not all) the problems it was having using Plaintiff's PWF prior to entering into the original agreement.  Further, under the Agreement, after Plaintiff shipped the PWF, Defendant had the opportunity to test the PWF to ensure whether to met the requisite specifications.  If the PWF did not meet the specifications, the parties' Agreement set forth the available remedies and procedures to obtain those remedies.  Moreover, by the time Defendant signed the second agreement, it was well aware of all the problems it was experiencing with the PWF.

For similar reasons, it is not a defense to this action that Plaintiff may have shipped non-confirming goods.  If Defendant received non-conforming good, it had a remedy

available under the Agreement.  It also is difficult to conceive how Plaintiff's failure to test the PWF prior to each shipment constitutes a breach of the covenant of good faith and fair dealing.  Again, if Defendant believed any shipment to be non-conforming, it had a remedy available to it under the Agreement.  In any event, it is undisputed that Plaintiff did test the PWF rolls, albeit Defendant disagrees with the methods Plaintiff used to test the rolls.

### c. **Whether Plaintiff Shipped Non-Conforming Goods**

Defendant next contends that Plaintiff did not ship PWF that met its published specifications.  This issue is at the crux of this case.  Absent sufficient evidence upon which a fair minded trier of fact could reasonably conclude that the PWF did not meet Plaintiff's published specifications, the remaining issues (including who had the burden of testing the PWF, whether Defendant properly informed Plaintiff of its belief that the goods were non-conforming, whether Plaintiff properly responded to Defendant's complaints, whether Defendant terminated the contract, etc.) are essentially moot.

The record is replete with instances of Defendant having problems using Plaintiff's PWF on its machines, Defendant informing Plaintiff of these problems, and Plaintiff attempting to assist Defendant in correcting the problems.  These problems were ongoing during the course of the parties' relationship, including before the time they entered into the subject agreements and by the time they entered into the second agreement in February.  Whether Plaintiff's PWF worked on Defendant's machines is not, however, the relevant inquiry.  The Agreement specifically provided that "[b]uyer shall be solely responsible for determining the suitability for use of the Products and Seller shall in no event be liable in this

respect."³  The issue is whether Plaintiff provided product that did not conform to its published specifications.

In its statement of material facts at paragraph 20, Plaintiff states that "[e]very shipment of plastic film sold by Plastic Suppliers to Cenveo, pursuant to the Supply Agreement, met or exceeded Plastic Suppliers' published specifications." This statement was supported by the affidavit of Edward Tweed, Plaintiff's Vice President of Technology, who states that Plaintiff's computer system tests each master roll of PWF for thickness, haze and gloss and that if any master roll fails to meet specifications, it is rejected and not shipped to a customer. Tweed also states that, in accordance with industry standards, peak tensile strength is measured on one master roll for every ten tons of film manufactured. Tweed further states that "if the thickness meets specifications then the tensile strength should also meet specifications." Tweed attested that every shipment of plastic film to Defendant met or exceeded Plaintiff's specifications. This is sufficient to sustain Plaintiff's burden on the motion that it shipped conforming goods.⁴

"[O]n a motion for summary judgment a party must lay bare its proof in order to raise a genuine issue of fact; it cannot simply rest on allegations." ESPN, Inc. v. Quiksilver, Inc., 586 F. Supp.2d 219, 228 (S.D.N.Y. 2008); Longi v. County of Suffolk, 2008 WL 858997, at *6 (E.D.N.Y. 2008).  A party that "does not lay bare all [its] proof in opposition to [a motion for summary judgment] runs the risk that summary judgment will be granted." Richard M. Morris v. State of New York, 1995 WL 155952, at *3 (N.D.N.Y. 1995).

---

³ Even if Plaintiff made representations to Defendant that its PWF would work on Defendant's machines, the plain terms of the Agreement disclaim any such representation.

⁴ Tweed's deposition testimony substantiates the statements in his affidavit.

- 8 -

In response to paragraph 20 of Plaintiff's statement of material facts, Defendant denied Plaintiff's assertion claiming that Plaintiff did not adequately test the film prior to shipping, Plaintiff never tested the film after Defendant complained about it, and Defendant's experts have determined that the film did not meet the published specifications. Absent from Defendant's response is a "specific citation to the record where the factual issue arises." N.D.N.Y.L.R. 7.1(a)(3). Under this Court's local rules, the failure to support the denial with a record citation is deemed an admission of the asserted fact and the Court is not obligated to parse the record in an attempt to substantiate Defendant's denial. See Rule 7.1(a)(3); Fed. R. Civ. P. 56(c)(1) and 56(e)(2); New York State Teamsters Conference Pension and Retirement Fund v. Express Services, Inc., 426 F.3d 640, 648-49 (2d Cir. 2005); Amnesty America v. Town of West Hartford, 288 F.3d 467, 470 (2d Cir. 2002); Bronner v. Catholic Charities of Roman Catholic Diocese of Syracuse, Inc., 2010 WL 981959, at *1 (N.D.N.Y. March 15, 2010). Accordingly, Defendant is deemed to have admitted that all shipments met Plaintiff's specifications.

Even without the operation of this local rule, Defendant has failed to raise a triable issue of fact whether the PWF met Plaintiff's published specifications. Under the Agreement, Defendant had the ability to test the PWF to determine whether it conformed to Plaintiff's published specifications. Defendant concedes that it was required to notify Plaintiff in writing of any failure of the film to conform to the published specifications. Def.'s Stmnt. of Mat. Facts at ¶ 60. Defendant further admits it never complained of Plaintiff's PWF in terms of the published specifications.

Moreover, Defendant submitted two expert reports concerning Plaintiff's PWF. One of Defendant's experts conducted various tests, identified various deficiencies in

Plaintiff's product, and concluded that Plaintiff's PWF is inferior to another manufacturer's plastic film product. Defendant's other expert concluded that Plaintiff's PWF is structurally weak, inconsistent, and contains gauge variances outside the range of acceptable runability. Notwithstanding these conclusions, neither of Defendant's experts states in his report or in an affidavit that Plaintiff's PWF did not conform to its published specifications. In fact, neither expert even discusses Plaintiff's specifications. If Defendant had proof that Plaintiff's film did not meet particular specifications, it should have pointed the Court to such evidence.

At oral argument, the Court specifically asked the parties to point to where in the record there was evidence suggesting that Plaintiff's PWF did not conform to the published specifications. Defendant cited various portions of deposition testimony, which the Court has reviewed. Those excerpts demonstrate that variances in gauge band could affect cutting and that it was possible that the problems Defendant was experiencing could have had to do with the film rather than the machines. What this testimony does not establish is that any gauge band variances or other problems with the film suggested that the film did not meet the published specifications. Thus, while a trier of fact could reasonably conclude that there were problems with Plaintiff's PWF and, perhaps, that it was an inferior product, there is insufficient evidence in the record upon which a lay trier of fact could reasonably conclude that the problems Defendant experienced meant that the film did not meet Plaintiff's specifications. Accordingly, even assuming Plaintiff failed to test the film to see whether it met specifications, Plaintiff used improper methods to test the film, or Plaintiff refused to test

the film after receiving Defendant's complaints,[5] there is insufficient evidence in the record to create a triable issue of fact that the film did not meet the specifications.

### d. Whether Defendant Demanded Adequate Assurances

Defendant next claims that it was entitled to cease performance because it demanded, and did not receive, adequate assurances that Plaintiff would provide conforming goods. Under section 2-609 of the U.C.C., "[w]hen reasonable grounds for insecurity arise with respect to the performance of either party the other may in writing demand adequate assurance of due performance and until he receives such assurance may if commercially reasonable suspend any performance for which he has not already received the agreed return." What is "reasonable grounds for insecurity" is determined in accordance with commercial standards. UCC 2-609(2); see also BAII Banking Corp. v. UPG. Inc., 985 F.2d 685, 702 (2d Cir. 1993).

The receipt of non-confirming goods can give rise to a reasonable ground for insecurity. Federated Retail Holdings, Inc. v. Sanidown, Inc., 2009 WL 4927560, at *4 (S.D.N.Y. 2009). Here, there is evidence in the record that Defendant experienced problems with cutting, static, tensile strength, thickness variations, and "material inconsistencies" that "impact[ed] all of [Defendant's] equipment. . . ." Defendant also complained of "variability in [the] manufacturing process." These problems made Defendant "hesitant to reorder [from] Plastic Suppliers." Thus, Defendant did have some cause to be concerned about the quality of the product it was receiving. However, as discussed, there is insufficient evidence that the PWF failed to meet the published specifications. By continuing to supply conforming goods

---

[5] There is deposition testimony suggesting that Plaintiff did do some testing on the film once it was alerted to the problems Defendant was having. See Bower Dep. at 162.

- 11 -

and working with Defendant to resolve the problems, Plaintiff fulfilled its obligation to provide reasonable assurances.

Moreover, U.C.C. § 1-102 states that "the effect of provisions of this Act may be varied by agreement, except as otherwise provided in this Act. . . ." U.C.C. § 1–102(3). Section 6 of the parties' Agreement acts to vary the provisions of § 2-609. See Bausch & Lomb, Inc. v. Bressler, 977 F.2d 720, 727 (2d Cur. 1992).  That section limits the ability of an aggrieved party to terminate the Agreement by providing that, upon the occurrence of a material breach, the aggrieved party could cancel the Agreement only by "giving written notice of termination to the other" and allowing the breaching party 90 days thereafter to effectuate a cure.  "'Under New York law, . . . [w]here the contract specifies conditions precedent to the right of cancellation, the conditions must be complied with.'" Bausch & Lomb, 977 F.2d at 727 (quoting Consumers Power Co. v Nuclear Fuel Servs., Inc., 509 F. Supp. 201, 211 (W.D.N.Y. 1981)).  Here, there is insufficient evidence in the record that Defendant sent a written notice of termination as required by the Agreement or that Defendant afforded Plaintiff ninety days to cure.

Defendant claims that its March 2010 e-mail constituted a notice of termination. This e-mail complained of ongoing quality issues, requested that Plaintiff supply a new product, and stated that Defendant "remains committed to the partnership with [Plaintiff], and we will see this process through to the end, at which point we either move forward with our supply agreement or agree that the partnership must end."  This letter cannot reasonably be interpreted as written notice that Defendant was terminating the agreement due to a material breach by Plaintiff.  Even assuming the March e-mail qualified as a notice of termination,

Plaintiff had ninety days to effectuate a cure.  Defendant, however, ceased performing its obligations under the contract prior to the expiration of the ninety day right to cure period.

### e.     Whether the Remedy Failed of Its Essential Purpose

Defendant next argues that summary judgment is inappropriate because the "repair or replace" warranty failed of its essential purpose, thereby allowing it to pursue other remedies.  This argument is made under § 2-719(2) of the UCC which allows for additional remedies other than as provided for in the contract if an exclusive or limited remedy fails of its essential purpose.  This section exists to ensure that there be at least a fair quantum of remedy for breach of the obligations or duties outlined in the contract.  Thus, "where an apparently fair and reasonable clause in a contract because of circumstances fails in its purpose or operates to deprive either party of the substantial value of the bargain, it must give way to the general remedy provisions of" Article 2 of the U.C.C.  Official Comment to UCC § 2-719.

This argument must be rejected because, as discussed, Defendant has not demonstrated a triable issue of fact whether Plaintiff supplied goods that failed to meet its published specifications.  Without evidence of non-conforming goods, the repair or replace provisions did not come into play and cannot be said that the remedy clauses failed in their essential purpose.

### f.     Whether Defendant Properly Reported Non-Conformance Under the Agreement and/or Properly Terminated the Contract

Defendant next claims that it properly notified Plaintiff of non-confirming goods and properly terminated the contract.  For the reasons previously discussed, Defendant's failure

to demonstrate a triable issue of fact whether the PWF conformed to the published specifications renders this issue moot.

### g. Defendant's Motion to Strike

Defendant moves to preclude documents concerning Plaintiff's internal testing that were submitted in support of Plaintiff's motion for summary judgment on the ground that Plaintiff did not earlier disclose those documents during the discovery process. It appears that Plaintiff did not promptly disclose these documents in response to Defendant's requests, which failure cannot be condoned. However, the Court does not find that preclusion is warranted because: (1) the documents were provided before relevant depositions were conducted; (2) Defendant had time to conduct the relevant depositions before responding to the motion for summary judgment; (3) Defendant's expert had the opportunity to inspect and observe Plaintiff's testing procedures prior to responding to the summary judgment motion; (4) Defendant received an extension of time to file papers in opposition to the motion for summary judgment; (5) even without the actual test result data, Plaintiff's motion for summary judgment was properly supported by the affidavit of Edward Tweed who attested that the film was tested and met the specifications before being shipped; and (6) Defendant had the opportunity to test the film itself and has not submitted evidence showing that the film failed to conform to Plaintiff's specifications. Accordingly, the Court denies the motion to strike, but notes that, based on the deposition testimony of Tweed and Bower, the decision on the motion for summary judgment would have been the same even if the data results had been precluded.

### h.     Defendant's Motion for Leave to File a Supplemental Brief

Defendant also moves for leave to file a supplemental brief on the ground that it obtained new evidence that another of Plaintiff's customers experienced problems identical to those experienced by Defendant.  The motion is granted.  However, this evidence is not relevant.  The Court has little doubt that Defendant and Continental experienced significant problems using Plaintiff's PWF on its machines.  What is missing, either from Plaintiff or Continental, is sufficient evidence upon which a trier of fact could reasonably conclude that Plaintiff's PWF did not meet its published specifications.

### i.     Defendant's Request Under Rule 56(d)

Defendant moves under Rule 56(d) requesting that the Court deny the motion for summary judgment pending the completion of additional discovery.  In particular, Defendant seeks to obtain evidence from other of Plaintiff's customers concerning problems they had with Plaintiff's PWF.  As just discussed, whether Defendant or other customers experienced problems is not at issue.  Because Defendant has not created a triable issue of fact on whether the goods it received failed to meet specifications, the Court sees no reason to deny summary judgment under Rule 56(d).

### j.     Motion to Amend

By letter dated September 22, 2011, Defendant moves to file an amended answer asserting a fraud in the inducement defense.  That motion is denied with leave to renew for failure to comply with N.D.N.Y.L.R. 7.1(a)(4).

### k.     Motion to Defer Ruling on Summary Judgment

By letter dated September 22, 2011, Defendant also asks the Court to defer ruling on Plaintiff's motion for summary judgment because "[b]ased on the new information learned

- 15 -

during the deposition of Continental Envelope on September 15, 2011, Cenveo now intends to file its own motion for summary judgment on the issue of fraud in the inducement, as well as the other defenses. . . ." The Court denies this request because: (1) in light of the plain terms of the Agreement disclaiming liability concerning "the suitability for use of the Products" (which Agreement was signed in November and again in February after Defendant was aware of the many problems it was experiencing), any such defense is dubious; (2) this motion already was adjourned once; (3) a further adjournment to allow for motions to amend the Answer and for a subsequent motion for summary judgment would impact the trial deadlines in this case (which already were extended out); and (4) the parties previously represented to the Court that no other dispositive motions were contemplated, see July 26, 2011 Text Minute Entry.

### I. Interlocutory Appeal

Lastly, at oral argument Defendant requested permission to file an interlocutory appeal in the event the Court granted Plaintiff's motion for summary judgment. It is a "basic tenet of federal law to delay appellate review until a final judgment has been entered." Koehler v. Bank of Bermuda, Ltd., 101 F.3d 863, 865 (2d Cir. 1996). A court may certify an interlocutory order for appeal if the order "[1] involves a controlling question of law [2] as to which there is substantial ground for difference of opinion and [3] that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).

Defendant did not articulate why an interlocutory appeal would be appropriate and, based on the reasons set forth above, the Court finds that this case does not involve a controlling question of law as to which there is a substantial ground for difference of opinion.

The Court similarly finds insufficient reasons to enter partial judgment pursuant to Fed. R. Civ. P. 56(b).

### III.	CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment on the issue of liability on the breach of contract claim is GRANTED, Defendant's motion to strike is DENIED, Defendant's motion to file supplemental materials in support of its opposition to the motion for summary judgment is GRANTED, the motion pursuant to Rule 56(d) is DENIED, the motion for leave to amend is DENIED without prejudice, the motion to defer a ruling on Plaintiff's motion is DENIED; and the motion to file an interlocutory appeal is DENIED.

IT IS SO ORDERED.

Dated:September 26, 2011


*Thomas J. McAvoy*
Thomas J. McAvoy
Senior, U.S. District Judge